UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD SHARIF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 21 C 2635 |
| | ) | |
| MYRON F. MACKOFF, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff Richard Sharif's Motion to Disqualify Defendant's Counsel. Also before the Court is Defendant Myron Mackoff's Motion to Dismiss Sharif's Complaint. For the following reasons, Sharif's Motion is denied and Mackoff's Motion is granted.[1]

## STATEMENT

For the purposes of these motions, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Sharif's favor. *League of Women Voters of Chi. v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

---

[1] Sharif also moves for default judgment. But the Court granted Mackoff an extension of time to answer or otherwise respond to the Complaint before Sharif moved for default judgment. Dkt. # 9. Sharif additionally did not move for entry of default before his motion for default judgment. *See VLM Food Trading Intern., Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (noting "two-step process" for default judgment in Federal Rule of Civil Procedure 55). Sharif's motion for default judgment is therefore denied.

Sharif brings this case against Mackoff, an Associate Judge of the Domestic Relations Division of the Circuit Court of Cook County. Mackoff presides over the divorce proceedings between Sharif and Sharif's former spouse. Sharif says Mackoff improperly ruled that Sharif earned $180,000 per year for purposes of calculating temporary maintenance (formerly known as alimony) and child support. As a result of Mackoff's ruling, Sharif's monthly obligations increased from $758 per month to $6,700 per month. Sharif contends that he does not actually earn $180,000 per year and therefore cannot pay his monthly obligations. Sharif attempted to appeal the order, but the appeal was dismissed because temporary maintenance orders are not appealable under Illinois law.

Thereafter, Mackoff sent Sharif to jail with a cash bond of $100,000 after Sharif failed to make court-ordered payments. Sharif appealed the incarceration order to the Illinois Appellate Court, but the Appellate Court did not consider the appeal an emergency or order an expedited schedule. Sharif was incarcerated for more than 60 days, which Sharif claims "is in violation of the standard for Domestic Relation judges in keeping parents in jail." Sharif also says Mackoff made him choose between withdrawing his interlocutory appeal and remaining in jail. Sharif therefore withdrew his appeal. Sharif maintains that he has never missed any support payments and should not have been sent to jail. On April 30, 2021, Mackoff entered an order requiring Sharif to pay $6,900 or go to jail again.

Sharif has tried several times to reduce his work hours and, consequently, his support payments because he suffered three heart attacks within the last three years. Sharif says his cardiologist recommended he reduce his hours to part-time. Mackoff, though, denied Sharif's requests to work fewer hours and reduce his support payments. Sharif believes he will have another heart attack if he is required to work full-time to meet his support payment obligations.

Based on these facts, Sharif claims: Procedural Due Process violations under 42 U.S.C. § 1983 (Count I); Substantive Due Process violations under Section 1983 (Count II); and violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") (Count III). Sharif seeks $15,000,000 in compensatory damages and an unspecified amount of punitive damages. Sharif now moves to disqualify Mackoff's counsel, the Illinois Attorney General's Office. Mackoff also moves to dismiss the Complaint. We begin with Sharif's Motion.

I.  **Motion to Disqualify the Illinois Attorney General**

Disqualification of a party's attorney is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). "[S]uch motions should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). Motions to disqualify require a two step analysis: (1) whether an ethical violation has occurred, and (2) if there has been a

violation, determine whether disqualification is the appropriate remedy. *Freeman Equip., Inc. v. Caterpillar, Inc.*, 262 F. Supp. 3d 631, 634 (N.D. Ill. 2017). The movant "bears a heavy burden of proving facts required for disqualification." *Id.*

Sharif maintains that the Illinois Attorney General is representing him in proceedings before the Judicial Inquiry Board and, therefore, there is a conflict of interest in the Attorney General representing Mackoff here. In support of this assertion, Sharif attaches several letters to the Illinois Supreme Court, Circuit Court of Cook County Chief Judge Timothy Evans, the Illinois Attorney Registration and Disciplinary Commission, the Judicial Inquiry Board, and the Federal Bureau of Investigation. Sharif also attaches his complaint with the Judicial Inquiry Board. The only mention of the Illinois Attorney General in any of these documents are notions of blind carbon copies (i.e. "BCC") sent to the Attorney General's Office.

Sharif provides no evidence that the Attorney General is representing him in the proceedings with the Judicial Inquiry Board, or that the Attorney General is at all involved in those proceedings.[2] Nor does Sharif provide any evidence that the Attorney General has any information that could prejudice Sharif in these proceedings. The Court therefore finds that there is presently no conflict of interest or ethical violation. Accordingly, Sharif's Motion is denied.

---

[2] In fact, it appears the Judicial Inquiry Board itself prosecutes complaints before the Illinois Courts Commission. *See* Ill. Const. Art. VI, sec. 15(c).

4

**II.     Motion to Dismiss**

Mackoff moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing the claims are barred absolute judicial immunity.[3]  Although Sharif failed to respond to the Motion, we still must determine if Mackoff's Motion has merit based on Sharif's Complaint.  *See Curtis v. Bembenek*, 48 F.3d 281, 287 (7th Cir. 1995) (noting a pro se plaintiff "can simply rest on the assumed truthfulness and liberal construction afforded his complaint" and "the nonmovant's lack of response to a motion to dismiss constitutes no admission of the proponent's factual assertions").  We find it does.

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012).  The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[3] Mackoff additionally argues that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine, which prohibits lower federal courts from reviewing state court judgments.  But since there is no final judgment and Sharif only seeks damages, not a modification of Mackoff's orders, it is not absolutely clear that the *Rooker-Feldman* doctrine bars Sharif's claims.  *See Sheikhani v. Wells Fargo Bank*, 526 F. App'x 705, 706–07 (7th Cir. 2013) (collecting cases where the *Rooker-Feldman* doctrine does not apply).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

Judicial immunity offers complete immunity from suit, not just a defense to liability. *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005). "When a judge does something that qualifies as a judicial act (that is, the act is carried out in a judicial capacity and jurisdiction is not clearly absent), then absolute immunity applies—even if the conduct was baseless, malicious, corrupt, or violates the Constitution." *Faulkner v. Loftus*, 2018 WL 11181980, at *17 (N.D. Ill. 2018) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)), *aff'd* 775 F. App'x 245 (7th Cir. 2019). "[W]hether an act by a judge is a 'judicial' one relates to the nature of the act itself," meaning "whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (cleaned up).

Here, Mackoff, as a domestic relations judge, had jurisdiction over the subject matter of the divorce proceedings. *See* Cir. Ct. of Cook Cnty. Gen. Order 1.2, 2.1(c)

6

(identifying the jurisdiction of the Domestic Relations Division). Judge Mackoff additionally had personal jurisdiction over Sharif, an Illinois resident who participated in the proceedings. And the allegations against Mackoff clearly arise from judicial acts: Mackoff awarded temporary maintenance and child support under the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS § 5/501 *et seq.*; and Mackoff found Sharif in contempt and sentenced him to jail for his failure to make court-ordered payments, *see In re Ehlers*, 2017 IL App (1st) 150293, ¶ 88 (affirming finding of contempt in divorce proceeding where contemnor failed to make required payments, asserted he could not afford payments, and remained in jail for over a year). All of Sharif's claims are therefore barred by judicial immunity. *See Faulkner*, 2018 WL 11181980, at *17 (finding claims under Section 1983 and RICO barred by judicial immunity).

The articles attached to and relied on in Sharif's Complaint are not to the contrary. Sharif's reliance on the first article, *Federal Judges Have No Grant of Immunity from the Constitution*, is inapposite because Mackoff is a state court judge, not a federal judge. And the second article, *Judicial Immunity is NOT Absolute*, which discusses the lack of judicial immunity when the defendant judge acted in the absence of all jurisdiction, is consistent with our analysis because Mackoff had jurisdiction over the subject matter and the parties.

Whether Mackoff made any factual or legal errors under Illinois law in carrying out his judicial acts remains an issue for the Illinois courts to resolve on appeal. *See*

7

*Dawson*, 419 F.3d at 661 ("If a judge errs 'through inadvertence or otherwise, a party's remedy is through appellate process'"). Accordingly, Mackoff's Motion is granted.

## CONCLUSION

For the reasons stated above, the Court denies Sharif's Motion to Disqualify Defendant's Counsel (Dkt. ## 11, 12, 14, & 15) and Motion for Default Judgment (Dkt. # 10), and Grants Mackoff's Motion to Dismiss (Dkt. # 22). Civil Case Terminated. It is so ordered.

Dated: 09/24/2021

Charles P. Kocoras
United States District Judge